## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CORTELLA JONES and MELISSA SCOTT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **Case No.:** |
| KAREN SMITH WOODSON and DEVON WOODSON, | ) ) ) | **Jury Trial Demanded** |
| Defendants | ) ) ) | |

## COMPLAINT

Plaintiffs Cortella Jones and Melissa Scott hereby submit this complaint for violations of 42 U.S.C. §1983 and related state law claims against the above-named defendants, and show the Court as follows:

## Parties

1.

Plaintiffs Cortella ("C.J.") Jones and Melissa Scott are both citizens of the state of Georgia and reside in the Northern District of Georgia.

2.

Defendant Karen Smith Woodson is a citizen of the state of Georgia and resides in the Northern District of Georgia and is thus subject to the jurisdiction of this Court.

3.

Defendant Devon Woodson is a citizen of the state of Georgia and resides in the Northern District of Georgia and is thus subject to the jurisdiction of this Court.

**Jurisdiction and Venue**

4.

This action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.   Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.

5.

Under 28 U.S.C. § 1391, venue is properly laid in this Court.

**Facts**

6.

Plaintiffs are entrepreneurs who, in 2015, were looking to start a restaurant/lounge business using their significant contacts, experience, and vendor relationships in the entertainment and restaurant industry.

7.

They were therefore looking for an appropriate space in which to house their business and were introduced to Defendant Devon Woodson in the course of their search, who informed them of an available space located at 254 Auburn Avenue, Atlanta, Georgia 30303 (hereinafter "the Premises").

8.

Devon Woodson informed Plaintiffs that the Premises was owned by his mother, Defendant Karen Smith Woodson, and had previously housed Pal's Lounge, a lounge/restaurant.

9.

Plaintiffs agreed to open their business at the Premises and, in anticipation of operating the business out of the Premises, signed a Lease Agreement with Defendant Karen Woodson for occupancy of the Premises on June 1, 2015.

10.

Plaintiffs immediately began work on the interior and exterior of the building in preparation for opening.

11.

After ongoing discussions and negotiations with Devon Woodson, Plaintiffs entered into a partnership and management services agreement with him for a term

of three years that governed the business operations of the new business, and they named the business Auburn Soul, LLC d/b/a Soul Bar at Pal's (hereinafter "Soul Bar").

12.

Plaintiffs opened the bar and operated it for the entire span of the three-year agreement with Devon Woodson.

13.

Despite their partnership agreement with Devon Woodson, Plaintiffs actually managed the day-to-day operations of the business, with Devon Woodson having almost no involvement.

14.

In addition, Plaintiffs continued leasing the Premises from Karen Woodson after the expiration of the initial lease term.

15.

However, Plaintiffs became aware of deteriorating conditions of the unused upstairs area of the Premises during their tenancy and had to take remedial steps to maintain the used downstairs portion of the Premises as a result of significant leaks and other problems resulting from the age and prior maintenance of the Premises.

16.

As a result of these problems with the Premises and the resulting costs associated with them, Plaintiffs advertised the business, Auburn Soul, LLC Bar at Pal's, for sale. At no time did Plaintiffs offer the Premises for sale, nor did they hold themselves out as the owners of the Premises. In fact, their advertisement for sale of the business specifically stated that the building was not part of the sale.

17.

Plaintiffs found a buyer who would pay $135,000 for the business. In addition, the buyer agreed to enter into a lease paying an increased amount.

18.

Plaintiffs communicated information about the potential sale and prospective buyer to Devon Woodson.

19.

Nonetheless, before Plaintiffs could speak with Defendant Devon Lee Woodson about the specifics of the buyer's proposal, Mr. Woodson contacted a locksmith and had the business locks changed, apparently after seeing or hearing about Plaintiffs' advertisement for sale of the business.

20.

On or about July 10, 2018, Plaintiffs soon thereafter received an email and letter from Devon Woodson stating that he was immediately dissolving the business, that he did not intend to renew the partnership agreement, and that the Plaintiffs could only retrieve their personal property from the building with his permission. To retrieve their personal property, Plaintiffs had to provide him a list of the items they wanted and would only be allowed in the Premises to retrieve said items within the 72 hours following his communication.

21.

Devon Woodson also stated his intention to keep any and all business property purchased by Plaintiffs that remained at the Premises.

22.

Devon Woodson also stated that he would not continue to operate Soul Bar or "perpetuate the Soul Bar brand" for his own financial gain.

23.

Plaintiffs filed an official complaint with the City of Atlanta Police Department about Defendant Devon Lee Woodson's actions in changing the locks and denying them access to the Premises.

24.

Plaintiffs then went to Fulton County Superior Court, and Plaintiff Melissa Scott obtained a temporary protective order (TPO) against Mr. Woodson regarding the lock change. The TPO was signed by Judge Alex Manning on July 11, 2019.

25.

Plaintiffs reinstalled the original locks so that their existing keys—and Devon Woodson's key—would unlock the door.

26.

On July 10, 2018, Plaintiffs closed after a Monday night event at 2:21 A.M. At 9:15 A.M. the next morning, Devon Woodson returned to the Soul Bar and again changed the locks. He did not provide them with a key or give them notice of the change.

27.

On July 11, 2018, Defendant Devon Lee Woodson was served with the TPO. On the same day at 3:00 P.M., Mr. Woodson came back to the Premises with a locksmith and again changed the locks.

28.

Plaintiffs called the Atlanta Police Department and met with APD Officer Cooper at the property. Plaintiffs informed Officer Cooper of the TPO.

29.

Devon Woodson was also at the Premises and contacted his mother, Defendant Karen Woodson, who asked to speak to Officer Cooper on the phone. After speaking with her, instead of arresting Devon Woodson for a violation of the TPO, Officer Cooper simply informed Devon Woodson that he could not change the locks. Upon information and belief, Karen Woodson not only informed the officer that she was the property owner, but also that she was a Fulton County Magistrate Judge.

30.

On July 12, 2018 Plaintiff Melissa Scott filed a motion for contempt with the Fulton County Superior Court for Defendant Devon Lee Woodson's willful violation of the TPO.

31.

On July 13, 2018, Plaintiffs visited the Atlanta Police Department to make them aware of their problem with the continuing violations of the TPO by Devon Woodson. After waiting two (2) hours, the supervisor on duty finally spoke with Plaintiffs and advised them that they could reenter and change the locks back.

32.

Plaintiffs went back to the Premises on July 13, 2018 at approximately 5:00 PM and found Devon Woodson there. He called the Atlanta Police Department, and when an officer arrived in response to the call, the officer did not arrest Devon Woodson for violating the TPO, instead telling the parties Devon Woodson could stay on the Premises because his mother was the owner.

33.

Devon Woodson asked the officer to remain at the Premises while he contacted his mother, Karen Woodson.

34.

The officer waited until approximately 5:30 PM, but when Karen Woodson had not yet arrived by that time, he left the Premises.

35.

At approximately 5:45 PM, Karen Woodson arrived and asked Plaintiffs and Devon Woodson for an explanation of the events surrounding the Premises and Plaintiffs' payments under the terms of the Lease Agreement. Plaintiffs showed Ms. Woodson proof that they were current on their lease payments, which seemed to shock Ms. Woodson, who apparently believed them to be in default.

36.

While Ms. Woodson was still at the Premises with Plaintiffs, Fulton County Sheriff's Office personnel arrived with two Temporary Protective Orders filed by Defendant Karen Smith Woodson against both Plaintiffs, Cortella Jones and Melissa Scott, respectively. Upon information and belief, Ms. Woodson used her position as a Magistrate Judge to obtain the TPO and to have it served at the Premises upon Plaintiffs on very short notice.

37.

In her application for the TPO, Ms. Woodson's sworn statement provided that the Plaintiffs denied her access to the property and denied her representatives and the Fire Marshal access to the property. Ms. Woodson also stated that Plaintiffs colluded to defraud the public by advertising the building for sale without authorization by Ms. Woodson. Finally, Ms. Woodson stated that the Plaintiffs sat in their automobiles, stood outside or had others sit outside and wait to change the locks and were coming inside to remove property from the building, including, but not limited to, contents in the safe, cash, and the alcohol license. Ms. Woodson also stated that she was in fear and concern for herself, her family, and property. Ms. Woodson asserted that Plaintiff Jones was subject to the jurisdiction of Fulton

County under Georgia law although she knew Ms. Jones lived in Cobb County, Georgia.

38.

The deputy sheriffs served Plaintiffs with Karen Woodson's TPO and told them that if they did not leave the property they would be arrested. Proof of service of the TPO was never filed with the Court.

39.

As a Fulton County Magistrate Judge, Ms. Woodson was well aware of the required statutory procedure to properly evict a tenant. She had previously heard and adjudged such cases in the past, and thus she knew that obtaining a TPO and denying Plaintiffs access to the Premises was unlawful.

40.

On July 15, 2018 at approximately 10:00 A.M., Plaintiff Cortella Jones entered the building to retrieve her payroll checkbook and card to pay the employees. When she entered the bar, she found Devon Woodson and another female sleeping. Ms. Jones asked Mr. Woodson if she could retrieve the payroll checkbook and card to pay the employees. Mr. Woodson refused and instead called his mother, Karen Woodson. Ms. Jones left without retrieving the checkbook or card.

41.

Ms. Jones wanted to ensure her employees were paid, however, so she was forced to obtain money orders and cash from the bank to make payroll.

42.

On July 16, 2018, Devon Woodson reopened the business with an event that Plaintiffs had been producing and hosting for the past three (3) years and, since that time, has continued to operate the business, despite his assurances that he would not continue to use the business name or to profit from it.

43.

On July 30, 2018, a hearing was held before Judge Tamika Houston regarding Plaintiff Melissa Scott's motion for contempt against Defendant Devon Woodson and regarding Defendant Karen Smith Woodson's petition to dismiss the TPO against Ms. Jones. All parties were represented by counsel and the parties mutually agreed to dismiss the TPOs. In open court, Plaintiffs' counsel inquired whether there were any outstanding warrants pursuant to the TPOs. They were told by Judge Houston and Defendant Karen Smith Woodson that no warrants against Plaintiffs were outstanding.

44.

However, on October 22, 2018, after completing a background check for employment with Delta Air Lines, Plaintiff Cortella Jones was detained at the airport and arrested for aggravated stalking regarding her entry of the business on July 15, 2018.

45.

According to the warrant affidavit filed by officer JK Sutton at the Atlanta Police Department, Plaintiff Cortella Jones entered the premises without the consent of an unnamed person. The warrant also stated that Ms. Jones had been served with the TPO on July 13, 2018 and therefore she was violating it. Judge Bianca Motley Broom of the Fulton County Magistrate Court issued the warrant.

46.

Following her arrest, Plaintiff Cortella Jones was booked into the Fulton County jail. At her initial appearance, the Magistrate Judge sitting recused herself because of her relationship to Karen Woodson. Ms. Jones was represented by counsel and her counsel contacted Ms. Woodson regarding the matter considering the statements made in open court and the dismissal of the TPO on July 30, 2018 by Judge Woodson. Ms. Woodson told counsel she did not want to think about it over the weekend and to call her back Tuesday. Nothing happened as result of Plaintiff

Cortella Jones' councils' inquiries, and Ms. Jones remained in jail until November 6, 2018.

47.

Ms. Jones was finally released only after multiple attorneys spoke with the respective presiding judges and the Fulton County District Attorney's Office about Ms. Jones's situation. Even after being told that the TPO had been dismissed voluntarily by Ms. Woodson, and that the Court had represented to Ms. Jones that there were no existing warrants at the time of the dismissal, the Assistant District Attorney assigned to Ms. Jones's matter merely consented to a signature bond, rather than dropping the clearly unfounded charges.

48.

Eventually, the District Attorney's office declined to prosecute Ms. Jones and her arrest records were restricted pursuant to Fulton County procedure.

49.

Plaintiffs both suffered financially and reputationally in their industry due to Karen and Devon Woodson's actions in cutting them off from their business. Their relationships with vendors, suppliers, and financial institutions were all damaged.

50.

In particular, Plaintiffs had an outstanding business loan that they were set to pay off later in 2018, assuming the business continued with its normal revenues. Because Plaintiffs' ability to operate the business was abruptly taken away, they defaulted on the loan payments and were sued by the loan company.

51.

In addition, other business accounts were sent to collections due to Plaintiffs' inability to pay.

52.

Not only did Plaintiffs suffer financially, their reputation in the restaurant and entertainment industry in Atlanta suffered as well among local suppliers, vendors, and potential employees, making it more difficult to obtain employment or continue their entrepreneurial endeavors elsewhere.

53.

Indeed, Ms. Jones's arrest record made it virtually impossible for her to obtain employment of any kind.

**Count One**
**Violations of 42 U.S.C. § 1983/Malicious Prosecution**
**(by Plaintiff Cortella Jones against Defendant Karen Woodson)**

54.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

55.

Defendant Karen Woodson instituted and continued a criminal prosecution of Plaintiff Cortella Jones by attesting to false circumstances in obtaining a TPO against her and by failing to affirmatively act even after knowing that Ms. Jones had been wrongfully arrested and held without bond for weeks.

56.

Defendant Karen Woodson did so with malice and without probable cause.

57.

Said criminal prosecution was terminated in Plaintiff Cortella Jones favor without formal charges being brought against Plaintiff, the underlying TPO having been dismissed before Ms. Jones's arrest.

58.

Defendant Karen Woodson's actions therefore caused a violation of Plaintiff Cortella Jones's Fourth Amendment right against unreasonable seizure.

59.

Plaintiff Cortella Jones has been damaged by Defendant Karen Woodson's actions in an amount to be determined at trial.

**Count Two**
**Violations of 42 U.S.C. § 1983/Fourteenth Amendment (by Plaintiff Cortella Jones against Defendant Karen Woodson)**

60.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

61.

Karen Woodson improperly exercised her political influence and position as a Fulton County Magistrate Judge to obtain a Temporary Protective Order against Plaintiff Cortella Jones that was based on false information and was lacking in probable cause.

62.

Defendant Karen Woodson, acting under color of state law through the cloak of her position as a Fulton County Magistrate Judge, has thus violated Jones's due process rights.

63.

Plaintiff Cortella Jones is entitled to damages under 42 U.S.C. § 1983 for the denial of her liberty interest in being free from wrongful incarceration, secured by the Fourteenth Amendment.

## Count Three
## Wrongful Eviction (by Plaintiffs against Karen Woodson)

64.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

65.

Plaintiffs had a valid and enforceable lease agreement for the property located at 254 Auburn Ave., Atlanta, GA. Plaintiffs were current on their rent payments on the date defendant Karen Woodson locked them out of the property.

66.

Defendant Karen Woodson did not institute the dispossessory action pursuant to O.C.G.A. § 44-7-50 et seq. As result, Defendant Karen Woodson is liable to Plaintiffs for wrongful eviction and liable for any and all damages flowing from the wrongful eviction.

## Count Four
## Breach of Contract (by Plaintiffs against Karen Woodson)

67.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

68.

Plaintiffs entered into a valid and enforceable lease agreement on June 1, 2015 for the premises located at 254 Auburn Ave., in. D., Atlanta, GA 30303, through December 31, 2016. The lease was twice renewed for the term of one year, making Plaintiffs' Lease Agreement with Karen Woodson valid through December 31, 2018.

69.

Nevertheless, Defendant Karen Woodson breached the Lease Agreement by illegally and improperly denying the Plaintiffs access to the Premises on or about July 13, 2018.

70.

Defendant Karen Woodson's breach of the Lease Agreement damaged the Plaintiffs in an amount to be proven at trial.

### Count Five
### Violations of 42 U.S.C. § 1983/Conspiracy
### (by Plaintiffs against Defendant Karen Woodson)

71.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

72.

Defendants Karen Woodson conspired with others within Fulton County government to reach an agreement or understanding that she, with others' assistance, would deny Plaintiff Cortella Jones of her constitutional right to liberty.

73.

They did so by instituting criminal process against Ms. Jones despite a lack of probable cause. In particular, two TPOs were issued on Karen Woodson's behalf against each of the Plaintiffs, without probable cause and without any apparent hearing or review of the false evidence presenting by Ms. Woodson.

74.

The conspiracy resulted in an actual denial of Ms. Jones's liberty interests under the Fourth and Fourteenth Amendments resulting in damages to be proven at trial.

## STATE LAW CLAIMS

### Count Six
### Malicious Prosecution (by Plaintiff Cortella Jones
### against Defendant Karen Woodson)

75.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

76.

Defendant Karen Woodson instituted and continued a criminal prosecution of Plaintiff Cortella Jones by attesting to false circumstances in obtaining a TPO against her and by failing to affirmatively act even after knowing that Ms. Jones had been wrongfully arrested and held without bond for weeks.

77.

Defendant Karen Woodson did so with malice and without probable cause.

78.

Said criminal prosecution was terminated in Plaintiff Cortella Jones favor without formal charges being brought against Plaintiff, the underlying TPO having been dismissed before Ms. Jones's arrest.

79.

Plaintiff Cortella Jones was damaged by Defendant Karen Woodson's malicious prosecution of a criminal action against her, in an amount to be proven at trial.

## Count Seven
## Tortious Interference with Business Relations (by Plaintiffs against Defendants Karen Woodson and Devon Woodson)

80.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

81.

Defendants Karen Woodson and Devon Woodson denied access to Plaintiffs to conduct their business at the Premises, despite the existence of a valid lease agreement for the premises and the ongoing concern of the business.

82.

Defendants Karen Woodson and Devon Woodson did so with malice and/or an intent to injure Plaintiffs.

83.

As result of this action, Defendants Karen Woodson and Devon Woodson induced a breach of Plaintiffs' contractual relations with their customers, vendors, and financial institutions.

84.

As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

**Count Eight**
**Conversion (by Plaintiffs**
**against Defendants Karen Woodson and Devon Woodson)**

85.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

86.

Plaintiffs purchased significant business property to be able to conduct business at the Premises.

87.

Defendant Devon Woodson did not jointly purchase the property at the Auburn Avenue premises, and therefore he had no title to it or right of possession to the same.

88.

Nonetheless, Defendants Devon Woodson and Karen Woodson took actual possession of Plaintiffs' business property when they illegally evicted Plaintiffs from the premises.

89.

Plaintiffs Cortella Jones and Melissa Scott demanded the return of their property.

90.

Defendants Karen Woodson and Devon Woodson refused to return Plaintiffs' property.

91.

Plaintiffs have been damaged in an amount to be proven at trial.

## **Count Nine**
## **Intentional Infliction of Emotional Distress (by Plaintiffs against Defendants Karen Woodson and Devon Woodson)**

92.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

Page 24

93.

Defendants Karen Woodson and Devon Woodson intentionally, deliberately, and recklessly caused severe emotional distress to Plaintiffs by depriving them of their livelihood and causing them grave financial harm.

94.

The outrageous and egregious acts by Defendants Karen Woodson and Devon Woodson against Plaintiffs were willful, wanton, and intentionally directed to harm Plaintiffs and were of such a nature as would naturally humiliate, embarrass, or outrage them.

95.

The acts as set forth herein by Defendants caused Plaintiffs substantial mental suffering, emotional upset, and distress and will likely cause continued emotional stress, particularly to Plaintiff Cortella Jones as a result of her unjust incarceration.

96.

As result of Defendants' extreme and outrageous conduct, Plaintiffs have suffered and will continue to suffer the loss of their income, mental pain and anguish, emotional trauma, and embarrassment.

**Count Ten**
**Trespass (by Plaintiffs**
**against Defendants Karen Woodson and Devon Woodson)**

97.

Plaintiffs reassert and reallege the allegations of paragraphs 1 through 53 as if fully set forth herein.

98.

By virtue of the Lease Agreement with Karen Woodson for possession of the Premises, Plaintiffs were in legal possession of the Premises.

99.

Nevertheless, Defendant Devon Woodson, who was not the owner of the property and was not a party to the Lease Agreement, moved into the Premises and essentially made it his personal residence.

100.

Furthermore, both he and Defendant Karen Woodson unlawfully took possession from Plaintiffs.

101.

As result, they are liable to Plaintiffs for civil trespass in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendants on all counts, and grant the following relief:

1. Award Plaintiffs compensatory damages in an amount to be determined by the jury;

2. Award Plaintiffs punitive damages in an amount to be determined by the jury;

3. Award Plaintiffs pre- and post-judgment interest at the maximum legal rate;

4. Award Plaintiffs' attorneys' fees and costs, including attorney's fees pursuant to 42 U.S.C. § 1988 and applicable state law; and

5. Provide such other and further relief as this court may deem just and proper.

Submitted this 22nd day of October, 2020.

Respectfully Submitted,

/s/Deborah V. Haughton
DEBORAH V. HAUGHTON
Georgia Bar No. 338038
HAUGHTON LAW, LLC
3535 Roswell Road, Suite 34
Marietta, Georgia  30062
debbie@haughtonlaw.net
(678) 596-2821

/s/Stephen D. Morrison Jr._____
STEPHEN D. MORRISON JR.
Georgia Bar No. 525180
THE MORRISON LAW FIRM, LLC
3535 Roswell Road, Suite 34
Marietta, Georgia  30062
steve@morrisonlawfirmllc.com
(770) 235-5846